# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

LUIS ANGEL HERNANDEZ-LUNA,

               Petitioner,

    vs.

KRISTI NOEM, *et al.*,

            Respondents.

Case No.: 2:25-cv-01818-GMN-EJY

**ORDER GRANTING, IN PART, PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Luis Angel Hernandez-Luna's Petition for Habeas Relief, (ECF No. 1). Federal Respondents Kristi Noem, the United States Department of Homeland Security, Pamela Bondi, Todd Lyons, Jason Knight, the United States Immigration and Customs Enforcement, and John Mattos filed an Answer, (ECF No. 6). Petitioner did not file a Reply.

This Petition is one of a growing number of challenges across the country to the government's new policy of mandatory detention of all noncitizens charged with entering the United States without inspection during the pendency of their removal proceedings. Petitioner, having been given a bond hearing but denied bond under 8 U.S.C. § 1226(a), now argues that he is being wrongfully detained under 8 U.S.C. § 1225(b)(2). Because the Court finds that Petitioner is being detained under 8 U.S.C. § 1226(a) and has not been provided a meaningful opportunity to seek review of the IJ's denial of bond, it GRANTS the Petition, in part, to allow him to seek reconsideration and appeal on his denial of bond. The Court DENIES the Petition to the extent it seeks his immediate release.

///

///

///

I.   **BACKGROUND**

Petitioner Luis Angel Hernandez-Luna is a 28-year-old Mexican national and former beneficiary of the Deferred Action for Childhood Arrivals (DACA) program who has resided in the United States since 2005. (Pet. ¶ 1, ECF No. 1).  He was arrested in 2019 and convicted of a misdemeanor DUI for which he paid a fine and completed probation. (*Id.* ¶ 42).  In May 2025, Petitioner was arrested for another misdemeanor DUI and was transferred to ICE custody the next day. (*Id.* ¶ 43).  ICE placed Petitioner in removal proceedings before the Las Vegas Immigration Court, and an Immigration Judge (IJ) ordered his removal on June 30, 2025. (*Id.* ¶¶ 44–45).  Petitioner appealed the IJ's removal order to the BIA, which is pending.[1] (*Id.* ¶ 45). He also filed a motion requesting a bond redetermination by an IJ, which was held on August 28, 2025.  The IJ denied bond, finding Petitioner "ha[d] not shown that he is not a danger to the community based on his DUI in 2019 and the pending charge for the same offense in 2025." (IJ Order, Ex. 1 to Pet., ECF No. 1-1).  Petitioner remains in detention and asserts that he was unable to file a motion for reconsideration or an appeal because DHS's change in policy made doing so futile.[2] (Pet. ¶ 49).  With this Petition, Petitioner challenges his continued detention and requests immediate release.

II.   **LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

---

[1] Respondents contend that "it is [their] understanding that Petitioner has since moved to withdraw his appeal of the IJ's removal order," which would "render Petitioner's removal order final" and would mean that Petitioner was being detained under 8 U.S.C. § 1231(a)(2)(A). (Answer at 2 n.1, ECF No. 6).  But Respondents provide no evidence of this alleged change in status and continue to argue that Petitioner is being detained under § 1225. The Court therefore proceeds on the facts alleged in the Petition until Respondents provide evidence to establish that Petitioner is being detained under a different section of the Immigration and Nationality Act (INA).

[2] Petitioner also mentions that ICE is preventing him from marrying his U.S. Citizen fiancée, asserting that "ICE has deprived him of his fundamental right to marry while he has been in their custody." (Pet. ¶ 45).  But beyond this conclusory statement, Petitioner makes no legal argument and raises no claim regarding a violation of his constitutional right to marry, so the Court does not address this issue.

(citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and. . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**III.    DISCUSSION**

Petitioner argues that he is entitled to injunctive relief because § 1226(a), not § 1225(b)(2), applies to him, and therefore his continued detention violates the INA. Respondents assert that petitioner is lawfully detained pursuant to § 1225(b)(2) and that he is not entitled to a bond hearing pursuant to *Hurtado*. Before the Court reaches the merits of the Petition, it must first address two threshold matters: jurisdiction and administrative exhaustion.

**A. Jurisdiction**

The threshold question for the Court is whether it has jurisdiction to hear Petitioner's claims because Respondents raise two arguments to support their contention that the Court does not. The Court finds that it has jurisdiction to hear this Petition and addresses Respondents' arguments in turn.

First, Respondents argue that 8 U.S.C. § 1252(g) strips this court of jurisdiction over "any cause of claim by or on behalf of an alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicated cases, or [3] execute removal orders against any alien under this chapter." (Answer 8:15–18). But Petitioner does not seek relief from this Court from a decision to execute a removal order. Instead, he is challenging Respondents' position that he should be subject to mandatory custody under § 1225(b)(2).

The Supreme Court has given a "narrow reading" to § 1252(g). *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999). "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482 (emphasis in original) (quoting 8 U.S.C. § 1252(g)). Instead of "sweep[ing] in any claim that can technically be said to 'arise from' the three listed actions," the provision "refer[s] to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Because Petitioner challenges the lawfulness of this detention during the pendency of his removal proceedings, it is not a challenge to one of the "three discrete events along the road to deportation" to which § 1252(g) applies. *Reno*, 525 U.S. at 482.

Second, Respondents argue that § 1252(b)(9) divests this Court of jurisdiction because it channels judicial review of all claims arising from deportation proceedings to a court of appeals in the first instance. (Answer 10:3–12:8). But, as the Supreme Court has explained, § 1252(b)(9) is not a jurisdictional bar where a petitioner is not "asking for review of an order of removal," "challenging the decision to detain them in the first place," or "challenging any part of the process by which their removability will be determined." Petitioner's challenge does not fall into any of those categories; thus, § 1259(b)(9) is not a bar to this Court's jurisdiction. *See Gonzales v. U.S. Immig. and Cust. Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process.").

Both of Respondents jurisdictional arguments are unsuccessful; the Court thus concludes that it has jurisdiction to hear this case.

## B. Administrative Exhaustion

As another threshold matter, Respondents argue that Petitioner was required to exhaust his administrative remedies prior to seeking relief under § 2241. (Answer 14:8–16:18). They

explain that by not appealing the underlying bond denial to the BIA, Petitioner is attempting to bypass the set forth administrative scheme and the Court should therefore deny his Petition for failure to exhaust administrative remedies.  Petitioner responds that administrative exhaustion should be excused because any further appeal to the BIA would be futile due to its ruling in *Matter of Yajure Hurtado*, 29 I&N 216 (BIA 2025). (Pet. ¶ 50).

The exhaustion requirement for habeas claims under § 2241 is prudential, rather than jurisdictional. *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (citing *Arango Marquez v. I.N.S.*, 346 F.3d 892, 897 (9th Cir. 2003)).  A prudential exhaustion requirement may be waived if any of the *Laing* factors apply: "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).  Petitioner bears the burden of demonstrating at least one of the *Laing* factors applies. *See Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (9th Cir. 2018).

The BIA's precedential decisions "serve as precedents in all proceedings involving the same issue or issues." 8 CFR §§ 1003.1(g)(1), (d)(i).  Because the opinion received a citation designation and based on the introductory paragraph's language, the BIA's decision in the *Matter of Yajure Hurtado* is precedential. *See* 29 I&N at 216 ("This case presents an issue that the Board has not previously addressed in a precedential decision").  Thus, an appeal to the BIA is essentially certain to result in a holding that anyone who is deemed "[a]n alien present in the United States without being admitted or paroled," will be subjected to mandatory detention without bond under § 1225(b)(2).  Accordingly, the Court agrees with Petitioner that a BIA appeal of his bond determination would indeed be futile and waives the prudential exhaustion requirement.

Having found that there are no jurisdictional or prudential limitations preventing consideration of the petition, the Court proceeds to the merits of the petition.

### C. Legal Basis for Detention

Petitioner asserts that Respondents' subjection of him to § 1225(b)(2), requiring mandatory detention, violates the INA and the Due Process Clause of the Fifth Amendment. The key question is whether Petitioner's detention is governed by § 1225(b)(2), which mandates detention, or § 1226(a), which allows for release on bond.  Respondents advance an interpretation of § 1225(b)(2) that they argue encompasses Petitioner.  They assert that § 1225(b)(2)'s "seeking admission" element is satisfied by the mere fact that Petitioner is present in the United States without admission. (Answer 12:10–17).

The Supreme Court recently analyzed the relationship between § 1225 and § 1226 in *Jennings v. Rogdriguez*, where the Court observed that the decision of who may enter this country and who may remain "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." 583 U.S. at 287.  It further explained that § 1225 "applies primarily to aliens seeking entry into the Unites States." *Id.* at 297.  By contrast, § 1226 "applies to aliens already present in the United States." *Id.* at 303.  "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Id.*

The government followed this dichotomy "for the past three decades," *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at * 4 (E.D. Mich. Sept. 9, 2025), until July 8, 2025, when DHS announced a change:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a

custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

*ICE Memo: Interim Guidance Regarding Detention Authority for Applicants for Admission*, AILA Doc. No. 25071607 (July 8, 2025); *see also Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025) (discussing the memo).

Numerous courts across the country have considered the applicability of § 1225(b)(2) versus § 1226(a) for noncitizens who have continuously remained in the United States for longer than two years but have not previously sought admission. The vast majority of courts confronting this question have rejected Respondents' interpretation, and the BIA's interpretation in *Hurtado*,[3] as contradictory to the plain text of § 1225.[4] *See, e.g.*, *Vazquez v. Feeley*, No. 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *16 (D. Nev. Sept. 17, 2025) ("In sum, the Court finds that the text and canons of statutory interpretation, including the legislative history, regulations, and long history of consistent agency practice, as well as the doctrine of constitutional avoidance, demonstrate that Petitioner is likely to succeed in establishing he and similarly situated noncitizens are subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A)."); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025) ("Rodriguez has shown that the text of Section 1226, canons of interpretation, legislative history, and longstanding agency practice indicate that he is governed

---

[3] This Court is not required to defer to the BIA's interpretation of § 1225 because "[w]hen the meaning of a statute [is] at issue, the judicial role [is] to 'interpret the act of Congress, in order to ascertain the rights of the parties.'" *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024) (quoting *Decatur v. Paulding*, 39 U.S. 497, 503 (1840)).

[4] The Court is aware of only three district court decisions concluding otherwise. *See Chavez v. Noem*, No. 3:25-cv-02325, 2025 WL 2730228, at *5 (S.D. Cal. Sept. 24, 2025) (denying petitioners' application for TRO); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351, at *10 (D. Neb. Sept. 30, 2025) (denying Petitioner's petition for writ of habeas corpus); *Laguna Espinoza v. Dir. of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No. 4:25-CV-02107, 2025 WL 2878173, at *4 (N.D. Ohio Oct. 9, 2025).

under Section 1226(a)'s 'default' rule for discretionary detention."); *Patel v. Almodovar*, No. 25-cv-15345, 2025 WL 3012323 at *3 (D.N.J. Oct. 28, 2025) (collecting cases).

This Court is persuaded by the comprehensive reasoning of the numerous courts that have rejected the government's new interpretation as an incorrect reading of the statutory language. Because the Court's rationale is aligned with that described in other District of Nevada cases, and because much ink has been spilled on this in hundreds of orders issued in the last couple of months,[5] there is no need for this Court to reinvent the wheel through the contribution of a repetitive discussion on this issue. Instead, in the interest of judicial economy, the Court follows *Vasquez* and incorporates its reasoning by reference. 2025 WL 2676082, at *11–16. Having adopted that reasoning, the Court finds that Petitioner is detained under § 1226.

### D. Relief Requested

Petitioner asks this Court to order his release and to hold a new hearing to reconsider his eligibility for bond. (Pet. 14:10–12.) Though the Court has made the determination that Petitioner is being detained under § 1226(a), it declines to order his release on that basis. Unlike other cases where courts have ordered immediate release, like *Vasquez*, Petitioner was previously denied bond. 2025 WL 2676082 at *3. Because of that key difference, and as explained below, the Court instead orders Respondents to give Petitioner the procedural protections provided for under § 1226(a) by allowing him to move for reconsideration and appeal the IJ's denial of bond.

The Ninth Circuit has explained that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). These procedural protections

---

[5] Kyle Cheney, *More than 100 judges have ruled against the Trump admin's mandatory detention policy*, Politico (Oct. 31, 2025), https://www.politico.com/news/2025/10/31/trump-administration-mandatory-detention-deportation-00632086.

include "several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202 (citing 8 U.S.C § 1226(a)(1)–(2); 8 C.F.R. §§ 236.1, 1003.19).

Because the BIA's decision in *Hurtado* came down just after the IJ issued Petitioner's bond determination, Petitioner did not have a meaningful opportunity to move the IJ to reconsider his order or to appeal it to the BIA.  Moving for reconsideration or appealing would not have resulted in meaningful review of the IJ's determination that Petitioner poses a danger to the community because, under binding BIA precedent, the IJ and BIA would have incorrectly concluded that Petitioner was being detained under 1225(b)(2) and was therefore not entitled to a bond hearing.  Petitioner had no opportunity to seek reconsideration or review of the IJ's denial of bond as is required by the "extensive procedural protections" available under § 1226(a).  Accordingly, the Court orders Respondents to treat Petitioner as detained under § 1226(a) and provide him with the opportunity to move for reconsideration and appeal his bond denial.

///
///
///
///
///
///
///
///
///
///

IV.    **CONCLUSION**

**IT IS HEREBY ORDRED** that Petitioner's Petition for Habeas Relief, (ECF No. 1), is **GRANTED, in part, and DENIED, in part.**

**IT IS FURTHER ORDERED** that Respondents must treat Petitioner as detained under § 1226(a) and provide him with the opportunity to move for reconsideration and appeal the IJ's denial of bond.

**IT IS FURTHER ORDERED** that Respondents must file a notice on the docket no later than December 1, 2025, to certify compliance with the Court's order.

**DATED** this __6__ day of November, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court